## LUIS A. LEBRON *v.* COMMISSIONER OF CORRECTION
## (SC 17209)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued March 7—officially released July 26, 2005

*Paul R. Kraus*, special public defender, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Christopher L. Morano*, chief state's attorney, and *Carolyn Longstreth*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SULLIVAN, C. J. The petitioner, Luis A. Lebron, appeals following our grant of certification[1] from the

---

[1] We granted certification limited to the following issue: "Did the Appellate Court properly conclude that the trial court lacked subject matter jurisdiction over the petitioner's habeas corpus petition?" *Lebron* v. *Commissioner of Correction*, 269 Conn. 914, 852 A.2d 743 (2004).

judgment of the Appellate Court affirming the judgment of the habeas court dismissing his petition for a writ of habeas corpus. The petitioner claims that the Appellate Court improperly concluded that the habeas court lacked subject matter jurisdiction over his habeas petition because the petitioner was not in "custody" within the meaning of General Statutes § 52-466[2] at the time his habeas petition was filed. See *Lebron* v. *Commissioner of Correction*, 82 Conn. App. 475, 479, 844 A.2d 946 (2004). We disagree and affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts and procedural history. "On September 18, 1992, the petitioner was convicted of assault in the third degree in violation of General Statutes § 53a-61 and sentenced to a term of six months incarceration to be served consecutively to a sentence he already was serving for an unrelated assault.[3] After serving his sentence, the petitioner was released from custody on

[2] General Statutes § 52-466 provides in relevant part: "(a) An application for a writ of habeas corpus shall be made to the superior court or to a judge thereof for the judicial district in which the person whose custody is in question is claimed to be illegally confined or deprived of his liberty, provided any application made by or on behalf of a person confined in the Connecticut Correctional Institution, Enfield-Medium or the Carl Robinson Correctional Institution, Enfield, shall be made to the superior court or a judge thereof for the judicial district of Tolland.

"(b) The application shall be verified by the affidavit of the applicant for the writ alleging that he truly believes that the person on whose account the writ is sought is illegally confined or deprived of his liberty.

"(c) The writ shall be directed to some proper officer to serve and return, who shall serve the same by putting a true and attested copy of it into the hands of the person who has the custody of the body of the person who is directed to be presented upon the writ. If the officer fails to make immediate return of the writ, with his actions thereon, he shall pay fifty dollars to the person so held in custody. . . ."

[3] "The 1992 assault conviction occurred while the petitioner was incarcerated at the Manson correctional institution in which he was serving a six year sentence for a 1991 conviction of assault in the first degree." *Lebron* v. *Commissioner of Correction*, supra, 82 Conn. App. 477 n.1.

April 15, 1996. On May 12, 1997, the petitioner was arrested and charged with murder in connection with a May 11, 1997 shooting. On August 12, 1999, the petitioner pleaded guilty to the lesser charge of manslaughter in the first degree in violation of General Statutes § 53a-55a and was sentenced to a term of thirty years incarceration.

"The petitioner filed an amended writ of habeas corpus on October 7, 2002, challenging the 1992 conviction and setting forth claims of ineffective assistance of counsel and actual innocence.[4] The petition alleged that the 1992 conviction enhanced his current sentence for the 1999 conviction and enhanced his inmate security classification.

"On August 7, 2002, the respondent, the commissioner of correction (commissioner), filed a motion to dismiss the petition, claiming that the court lacked subject matter jurisdiction because the petitioner could not demonstrate that he was 'in custody' for the 1992 conviction under attack at the time the habeas petition was filed. In his memorandum in opposition, the petitioner countered that the sentence enhancements to which he was subjected constituted collateral consequences sufficient to render him 'in custody' for purposes of a habeas attack on the 1992 conviction." Id., 476–77.

During a hearing on the commissioner's motion to dismiss, the habeas court asked the petitioner to clarify which conviction his habeas petition challenged. The petitioner informed the habeas court that his petition challenged the 1992 conviction because that conviction

---

[4] "The petitioner first filed a petition for a writ of habeas corpus in May, 1999." *Lebron* v. *Commissioner of Correction*, supra, 82 Conn. App. 477 n.2. It is undisputed, however, that the amended petition is the operative petition for the purpose of this appeal. Accordingly, all references to the petitioner's petition for a writ of habeas corpus pertain to the amended petition.

allegedly was used to enhance his sentence and security classification for his 1999 conviction.[5] The habeas court "concluded that it lacked subject matter jurisdiction to entertain the petition and granted the commissioner's motion to dismiss. The court reasoned that . . . the petitioner no longer was 'in custody' under the 1992 conviction because the sentence imposed for that conviction had been served fully by the time the habeas petition was filed." Id., 477–78.

[5] "The Court: . . . [W]hat [the commissioner has] demonstrated is that in April of 1999, [the petitioner] had served the sentence that he is challenging.

"[Defense Counsel]: Yes.

"The Court: And had been discharged from that.

"[Defense Counsel]: That is correct, Your Honor. However, the cases that I cite . . . all stand for the proposition that demonstration of collateral consequences is a sufficient ground for this court to exercise habeas jurisdiction . . . . In this case we are alleging consistently with those cases' collateral consequences; namely, the fact that his sentence in the manslaughter case was enhanced by reason of this conviction, as well as that his current internal security classification within the department of correction is being enhanced by that conviction, of which my client maintains he is actually innocent . . . .

\* \* \*

"The Court: . . . [E]ven if we accept the argument that an enhancement of sentence is a collateral consequence, the sentence—the case that is actually the subject of this habeas petition is the 1992 case.

"[Defense Counsel]: Yes.

"The Court: As of April of 1999, he was totally discharged from that sentence. At least that's what it appears to be. So this really would be more in the nature of an attack upon the 1999 conviction for manslaughter, in that the enhancement is improper. And I realize it's sort of quibbling over a few points here, but I think you're attacking the wrong conviction.

"[Defense Counsel]: Maybe, maybe. Maybe so, Your Honor. I really—I've not addressed that in any of my research. Perhaps his remedy is in the [1999] manslaughter conviction.

"The Court: Which would necessitate filing a new habeas petition. In other words, the proper remedy might be to dismiss the current one, because the current one, in fact, merits dismissal. He had served his sentence. He's still serving the 1999 sentence for manslaughter. Your point raised is that he was denied effective assistance of counsel in that the [1992] conviction was used to enhance the [1999] sentence; is that correct?

"[Defense Counsel]: Yes, Your Honor. Well, my point is he was denied effective assistance within the four corners of this petition. My point is he was denied effective assistance of counsel in the 1992 [conviction] . . . ."

The petitioner claims on appeal that the habeas court failed to construe liberally his petition as a challenge to his 1999 conviction, as enhanced by his 1992 conviction and, therefore, improperly dismissed his petition. Alternatively, if this court agrees with the habeas court that the petition directly attacks the petitioner's expired 1992 conviction, the petitioner claims on appeal that: (1) the custody requirement in § 52-466 is not jurisdictional; (2) even if the custody requirement is jurisdictional, the collateral consequences of the petitioner's 1992 conviction are sufficient to render him in custody within the meaning of § 52-466; and (3) the habeas court improperly dismissed the petition in violation of the petitioner's federal and state rights to due process of law and in violation of the prohibition against the suspension of the writ of habeas corpus in the Connecticut constitution. We disagree.

"As a preliminary matter, we set forth the applicable standard of review. The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Neiman* v. *Yale University*, 270 Conn. 244, 250–51, 851 A.2d 1165 (2004).

Before addressing the substance of the petitioner's claims, we review the United States Supreme Court's jurisprudence concerning challenges to expired convictions pursuant to the federal habeas statutes.[6] In *Maleng*

[6] Title 28 of the United States Code, § 2241, governs the federal court's power to grant the writ of habeas corpus and provides in relevant part: "(a) Writs of habeas corpus may be granted by the Supreme Court, any justice

v. *Cook*, 490 U.S. 488, 489, 109 S. Ct. 1923, 104 L. Ed. 2d 540 (1989) (per curiam), the petitioner[7] was convicted of robbery in Washington state court in 1958 and sentenced to twenty years of imprisonment. In 1976, while on parole from his 1958 conviction, the petitioner was

thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had. . . .

"(c) The writ of habeas corpus shall not extend to a prisoner unless—

"(1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or

"(2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or

"(3) He is in custody in violation of the Constitution or laws or treaties of the United States; or

"(4) He, being a citizen of a foreign state and domiciled therein is in custody for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, order or sanction of any foreign state, or under color thereof, the validity and effect of which depend upon the law of nations; or

"(5) It is necessary to bring him into court to testify or for trial.

"(d) Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application. The district court for the district wherein such an application is filed in the exercise of its discretion and in furtherance of justice may transfer the application to the other district court for hearing and determination."

Title 28 of the United States Code, § 2254, governs the issuance of the writ of habeas corpus to individuals in state custody and provides in relevant part: "(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. . . ."

[7] In *Maleng* and *Lackawanna County District Attorney* v. *Coss*, 532 U.S. 394, 121 S. Ct. 1567, 149 L. Ed. 2d 608 (2001), which we discuss later in this opinion, the state petitioned the United States Supreme Court for review and was, as a procedural matter, the petitioner. For purposes of clarity, we refer to the prisoners as the petitioners in our discussion of those cases.

convicted of various state charges and, in 1978, he was sentenced to two life terms and one ten year term of incarceration. Id. Under Washington law, the 1958 conviction increased by several years the mandatory minimum term that the petitioner had to serve on his 1978 sentences. Id. In 1976, the petitioner was also convicted of bank robbery and conspiracy in federal court and sentenced to thirty years imprisonment. Id.

In 1985, while in federal prison, the petitioner filed a pro se petition for a writ of habeas corpus in the United States District Court for the Western District of Washington. Id. The petition listed the 1958 Washington conviction as the "conviction under attack." Id., 490. In addition to substantive challenges to the 1958 conviction, the petition also alleged that the 1958 conviction had enhanced illegally the length of the 1978 state sentences, which the petitioner had not yet begun to serve.[8] Id. The question before the United States Supreme Court was whether the petitioner was "in custody" within the meaning of 28 U.S.C. § 2241 (c) (3). Id.

The court observed that "[t]he federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are *in custody* . . . ." (Emphasis in original; internal quotation marks omitted.) Id. The court noted that in *Carafas* v. *LaVallee*, 391 U.S. 234, 238, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968), it had "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack *at the time his petition is filed.*" (Emphasis added.) *Maleng* v. *Cook*, supra, 490 U.S. 490–91. The court had "never held, however, that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed." (Emphasis in original.) Id., 491.

---

[8] The state of Washington had lodged a detainer against the petitioner with federal prison authorities. *Maleng* v. *Cook*, supra, 490 U.S. 489.

The court concluded that the collateral consequences suffered by the petitioner, specifically, the enhancement of his subsequent sentence, were insufficient to render him "in custody" on his 1958 conviction. Id., 492. It reasoned that "[w]hile [it had] very liberally construed the 'in custody' requirement for purposes of federal habeas, [it had] never extended it to the situation where a habeas petitioner suffers no present restraint from a conviction. Since almost all [s]tates have habitual offender statutes . . . a contrary ruling would mean that a petitioner whose sentence has completely expired could nonetheless challenge the conviction for which it was imposed at any time on federal habeas. This would read the 'in custody' requirement out of the statute and be contrary to the clear implication of the opinion in *Carafas* v. *LaVallee*, supra [391 U.S. 294]." *Maleng* v. *Cook*, supra, 490 U.S. 492.[9] The court concluded that "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." Id.

The court went on to conclude, however, that the petitioner was "in custody" on the 1978 state sentences that he had not yet begun to serve when he filed his habeas petition. Id., 493, citing *Peyton* v. *Rowe*, 391 U.S. 54, 67, 88 S. Ct. 1549, 20 L. Ed. 2d 426 (1968) (petitioner serving two consecutive sentences was "in custody" on second sentence he had not yet begun to serve), and *Braden* v. *30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 488, 93 S. Ct. 1123, 35 L. Ed. 2d 443 (1973) (petitioner serving sentence in Alabama, who was subject to detainer filed by Kentucky officials, was "in custody" on outstanding Kentucky charge). Because the "habeas petition, construed with the deference to which pro se litigants are entitled . . . can be read as

[9] See footnote 16 of this opinion.

asserting a challenge to the 1978 sentences, as enhanced by the allegedly invalid prior conviction"; (citation omitted) *Maleng* v. *Cook,* supra, 490 U.S. 493; the court concluded that the defendant had "satisfied the 'in custody' requirement for federal habeas jurisdiction." Id., 494. The court clarified that its holding was "limited to the narrow issue of 'custody' for subject-matter jurisdiction of the habeas court" and expressed "no view on the extent to which the 1958 conviction itself may be subject to challenge in the attack upon the 1978 sentences which it was used to enhance." Id.

In *Lackawanna County District Attorney* v. *Coss,* 532 U.S. 394, 399, 121 S. Ct. 1567, 149 L. Ed. 2d 608 (2001), the petitioner filed a habeas petition in the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 2254; see footnote 6 of this opinion; alleging ineffective assistance of counsel in connection with three expired 1986 state convictions allegedly used to enhance the sentence on a subsequent state conviction. The District Court had determined that the petitioner "was arguing that his current sentence . . . was adversely affected by the 1986 convictions because the sentencing judge considered these allegedly unconstitutional convictions in computing [the petitioner's] present sentence" and, therefore, that it had subject matter jurisdiction over the petition. (Internal quotation marks omitted.) Id., 400. In *Lackawanna County District Attorney,* a majority of the United States Supreme Court agreed with this determination, concluding that "[l]ike the [petitioner] in *Maleng,* [the petitioner's] . . . petition can be (and has been) construed as asserting a challenge to the [current] senten[ce], as enhanced by the allegedly invalid prior [1986] conviction[s]." (Internal quotation marks omitted.) Id., 401–402.

The court then considered "the question . . . left unanswered in *Maleng*: the extent to which the [prior

expired] conviction itself may be subject to challenge in the attack upon the [current] senten[ce] which it was used to enhance." (Internal quotation marks omitted.) Id., 402. A majority of the court concluded that "considerations relating to the need for finality of convictions and ease of administration"; id.; generally preclude a habeas petitioner from collaterally attacking expired convictions. Accordingly, the majority held that "once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. . . . If that conviction is later used to enhance a criminal sentence, the [petitioner] generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." (Citation omitted.) Id., 403–404.

The majority carved out one exception to this general rule—it concluded that a habeas petitioner could challenge an expired conviction if the petitioner attacked his "enhanced sentence on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the [s]ixth [a]mendment, as set forth in *Gideon* v. *Wainwright*, [372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963)]." *Lackawanna County District Attorney* v. *Coss*, supra, 532 U.S. 404. The majority determined that such an exception was appropriate because "[t]he special status of *Gideon* claims in this context is well established in our case law." Id. A plurality of the court determined that "another exception to the general rule precluding habeas relief *might* be available," although the circumstances of the case did not require the plurality to resolve the issue. (Emphasis added.) Id., 405. The plurality noted that "[i]t is not always the case . . . that a defendant can be faulted for failing to obtain

timely review of a constitutional claim. For example, a state court may, without justification, refuse to rule on a constitutional claim that has been properly presented to it. . . . Alternatively, after the time for direct or collateral review has expired, a defendant may obtain compelling evidence that he is actually innocent of the crime for which he was convicted, and which he could not have uncovered in a timely manner." (Citation omitted.) Id. The plurality cautioned, however, that "[w]hatever such a petitioner must show to be eligible for review, the challenged prior conviction must have adversely affected the sentence that is the subject of the habeas petition." Id., 406. Because the plurality determined that the petitioner's subsequent sentence had not been enhanced by his 1986 convictions, it concluded that his petition could not be reviewed under the federal habeas statute.[10] Id., 406–408.

I

The petitioner in the present matter first claims that the habeas court failed to construe his petition as an attack on his 1999 conviction as enhanced by his 1992

---

[10] The plurality reached the merits of the petitioner's claim and undertook a review of whether the petitioner's expired conviction had actually enhanced his subsequent sentence because it "assum[ed] the existence of a limited exception to the general rule barring review of an expired prior conviction." *Lackawanna County District Attorney* v. *Coss*, supra, 532 U.S. 406. The plurality presumably assumed the existence of a limited exception because the petitioner's state habeas petition, filed while the petitioner was still in custody, had been pending for almost fourteen years and had "never been the subject of a judicial ruling. Neither [the petitioner] nor [the] respondent [was] able to explain this lapse." Id., 397–98. The plurality concluded that the petitioner's expired convictions had not actually enhanced his subsequent sentence because although the expired convictions were part of his criminal record and the sentencing court considered his criminal record as a whole, the expired convictions were "such a minor component of [the petitioner's] record that there is no question that the sentencing court, given its concerns, would have imposed exactly the same sentence had those convictions been omitted from [the petitioner's] record." (Internal quotation marks omitted.) Id., 407.

conviction and, therefore, improperly dismissed his petition for lack of subject matter jurisdiction pursuant to *Maleng* v. *Cook*, supra, 490 U.S. 488, and *Lackawanna County District Attorney* v. *Coss*, supra, 532 U.S. 394. Further, because the habeas petition includes an allegation of actual innocence, the petitioner claims that pursuant to *Lackawanna County District Attorney*, the illegality of his 1992 conviction can be challenged within his attack on his 1999 conviction. We conclude that the habeas court properly construed the petition and, therefore, we do not reach the petitioner's argument that a claim of actual innocence constitutes an exception to the conclusive validity of state convictions under *Lackawanna County District Attorney*.

It is well settled that "[t]he petition for a writ of habeas corpus is essentially a pleading and, as such, it should conform generally to a complaint in a civil action. . . . The principle that a plaintiff may rely only upon what he has alleged is basic. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . . While the habeas court has considerable discretion to frame a remedy that is commensurate with the scope of the established constitutional violations . . . it does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . The purpose of the [petition] is to put the [respondent] on notice of the claims made, to limit the issues to be decided, and to prevent surprise." (Citations omitted; internal quotation marks omitted.) *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 406, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999). Moreover, "[t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he [petition] must be read in its entirety in such a way as to give effect to the pleading with reference to

the general theory upon which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Broadnax* v. *New Haven*, 270 Conn. 133, 173–74, 851 A.2d 1113 (2004).

The petition in the present matter was prepared with the assistance of counsel and it is undisputed that the petitioner's 1992 conviction had expired by the time it was filed. Although the petition asserts that the petitioner is "now being held and confined by" the commissioner, it alleges that the current confinement is illegal because the petitioner received ineffective assistance of counsel in connection with his expired 1992 conviction and was actually innocent of that crime. The petition further alleges that the 1992 conviction illegally enhanced his sentence and security classification for the 1999 conviction. In response to the habeas court's inquiry regarding the conviction under attack, the petitioner repeatedly assured the habeas court that the petition directly challenged the petitioner's 1992 conviction. See footnote 5 of this opinion. When the habeas court informed the petitioner that it thought the petition attacked the wrong conviction, the petitioner responded: "Maybe, maybe. Maybe so, Your Honor. I really—I've not addressed that in any of my research. Perhaps [the petitioner's] remedy is in the [1999] manslaughter conviction." The legal theory the petitioner presented to the habeas court was that the collateral consequences suffered by the petitioner because of his allegedly illegal 1992 conviction were sufficient to render him in "custody" on that conviction within the meaning of § 52-466 and to bring the petition within the

subject matter jurisdiction of the court.[11] Accordingly, interpreting the pleadings consistent with the general theory advanced by the petitioner, we conclude that the habeas court properly construed the petition as an attack on the petitioner's 1992 conviction.[12] Cf. *Janusauskas* v. *Fichman*, 264 Conn. 796, 807, 826 A.2d 1066 (2003) ("[o]ur law is well settled that a party may not try its case on one theory and appeal on another" [internal quotation marks omitted]).

## II

The petitioner next claims that even if the habeas court properly determined that his petition attacks his 1992 conviction, the habeas court improperly dismissed his petition for lack of subject matter jurisdiction. Specifically, the petitioner argues that: (1) the custody requirement in § 52-466 refers to venue and is not jurisdictional; (2) even if the custody requirement is jurisdictional, the collateral consequences of his expired conviction were sufficient to render the petitioner in "custody" within the meaning of § 52-466; and (3) the habeas court's failure to exercise subject matter jurisdiction over the petition violated the petitioner's rights to due process of law under the state and federal consti-

---

[11] The petitioner's Appellate Court briefs reveal that he presented the same legal theory to the Appellate Court.

[12] The petitioner argues that *Maleng* v. *Cook*, supra, 490 U.S. 493–94, articulates a federal rule of construction for habeas petitions. Specifically, the petitioner argues that if a petition alleges that a current conviction has been enhanced by an expired conviction, *Maleng* requires the habeas court to construe the petition liberally as an attack on the current conviction. We disagree. In *Maleng*, the court liberally construed the petitioner's habeas petition because it was capable of such a construction and it was filed by a pro se litigant. Id., 493, citing *Haines* v. *Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652, rehearing denied, 405 U.S. 948, 92 S. Ct. 963, 30 L. Ed. 2d 819 (1972). Pleadings filed by pro se litigants in federal courts are held "to less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines* v. *Kerner*, supra, 520. Accordingly, we conclude that *Maleng* followed a well established federal rule of construction for pro se pleadings and that it did not set forth a federal rule of construction for habeas petitions.

tutions and suspends the writ of habeas corpus in violation of the Connecticut constitution. We disagree.

## A

We first address the petitioner's claim that the habeas court improperly dismissed his petition for lack of subject matter jurisdiction because the custody requirement in § 52-466 is not jurisdictional. Specifically, the petitioner argues that § 52-466 "provides only for venue" and that it does not "limit the common-law authority of judges to entertain writs of habeas corpus." We disagree.

"While jurisdiction is the power and authority of the court to act, venue is the place where the power to adjudicate is to be exercised, that is, the place where the suit may or should be heard. The requirements of jurisdiction are grounded in the state's inherent judicial power, while the requirements of venue are grounded in convenience to litigants. Venue does not involve a jurisdictional question but rather a procedural one, and thus is a matter that goes to process rather than substantive rights. Moreover, although a court's lack of subject-matter jurisdiction cannot be waived, improper venue may be waived and may be changed by the consent of the parties." 77 Am. Jur. 2d 608, Venue § 1 (1997); see also *Savage* v. *Aronson*, 214 Conn. 256, 263, 571 A.2d 696 (1990) ("[s]tatutory venue requirements simply [confer] a privilege not to be required to attend court at a particular location" [internal quotation marks omitted]).

In determining whether the custody requirement in § 52-466 pertains to subject matter jurisdiction or venue, we look first to the language of the statute.[13] Section

[13] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." When, however, the meaning

52-466 (a) provides in relevant part that "[a]n application for a writ of habeas corpus shall be made to the superior court or to a judge thereof for the judicial district in which the person whose *custody* is in question is claimed to be illegally confined or deprived of his liberty . . . ." (Emphasis added.) Because the language of the statute is unclear as to whether the custody requirement is a prerequisite for "the [court's] power or authority to adjudicate" habeas petitions or instead, merely "refers to the place where that authority should be exercised"; R. Casad & W. Richman, Jurisdiction in Civil Actions (3d Ed. 1998) § 1-3, p. 14; we look to the history and purpose of the writ of habeas corpus.

"We [begin by taking] note of the basic purpose underlying what is one of the most extraordinary and unique legal remedies in the procedural armory of our law. . . . Although it is true that the United States Supreme Court has not always followed an unwavering line in its conclusions as to the availability of [t]he [writ of habeas corpus] . . . from the time the writ originated in seventeenth century England, its central purpose has been to test the legality of detention. English legislation and common law have been recognized by the United States Supreme Court as authoritative guides in applying the writ in the federal courts. *McNally* v. *Hill*, 293 U.S. 131, 136–37, 55 S. Ct. 24, 79 L. Ed. 238 (1934), overruled on other grounds, *Peyton* v. *Rowe,* [supra, 391 U.S. 54].

"In applying federal habeas statutes, the United States Supreme Court has said that [t]he purpose of

of a statute is not plain and unambiguous, "we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.,* 273 Conn. 287, 292, 869 A.2d 1193 (2005).

the proceeding defined by the statute was to inquire into the legality of the detention . . . . There is no warrant in either the statute or the writ for its use to invoke judicial determination of questions which could not affect the lawfulness of the custody and detention, and no suggestion of such a use has been found in the commentaries on the English common law. *McNally* v. *Hill*, [supra, 293 U.S. 136–37]; see also *Engle* v. *Isaac*, 456 U.S. 107, 136, [102 S. Ct. 1558, 71 L. Ed. 2d 783] (1982) (Stevens, J., concurring in part and dissenting in part) (relief available to a prisoner only if he is held in custody in violation of the constitution or laws or treaties of the United States); *Preiser* v. *Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973) ([i]t is clear, not only from the language of [the federal habeas statutes], but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody); *Fay* v. *Noia*, [372 U.S. 391, 402, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963)] (writ's root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release); [H. Hart & H. Wechsler, The Federal Courts and the Federal System (3d Ed. 1988) p. 1468] (Great Writ always serves the function of precipitating a judicial inquiry into a claim of illegality in the petitioner's detention for the purpose of commanding his release, or other appropriate disposition.); P. Bator, 'Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,' 76 Harv. L. Rev. 441, 444–45 (1963) ([i]ts function, in the great phrase, is to test the legality of the detention of one in the custody of another) . . . ." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 813–14, 786 A.2d 1091 (2002); see also *Maleng* v. *Cook*,

supra, 490 U.S. 490 ("[t]he federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are *in custody*" [emphasis in original; internal quotation marks omitted]); *Parker* v. *Ellis*, 362 U.S. 574, 576, 80 S. Ct. 909, 4 L. Ed. 2d 963 (1960) ("it is a condition upon [the] [c]ourt's jurisdiction to adjudicate an application for habeas corpus that the petitioner be *in custody when that jurisdiction can become effective*" [emphasis added]), overruled on other grounds, *Carafas* v. *LaVallee*, supra, 391 U.S. 234.

"The history of our own jurisprudence is wholly in accord with these principles. Habeas corpus provides a special and extraordinary legal remedy for illegal detention. . . . The deprivation of legal rights is essential before the writ may be issued. . . . Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. . . . When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. . . . Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, supra, 258 Conn. 815; see also *Tracy* v. *Johnson*, 156 Conn. 630, 631, 239 A.2d 477 (1968) (custody is prerequisite to court's exercise of jurisdiction); *Abed* v. *Commissioner of Correction*, 43 Conn. App. 176, 179, 682 A.2d 558 ("[s]ubject matter jurisdiction for adjudicating habeas petitions is conferred on the Superior Court by General Statutes § 52-466, which gives it the authority to hear those petitions that allege illegal confinement or deprivation of liberty"), cert. denied, 239 Conn. 937, 684 A.2d 707 (1996); 1 Z. Swift, A System of the Laws of the State of Connecticut (1795) p. 99 ("The writ of habeas corpus, is a valuable privilege of the citizen, and is demandable of common right, for any

person imprisoned under [color] of authority, or without it, except the imprisonment be on execution, or on conviction of some crime. The superior court grant this writ, which must be directed to the person who has the custody of the complainant, with a command to bring him before the court, with the cause of his detention. . . . When the person is brought forward before the court, with a return of the cause of his detention, the court will examine the matter, and if the detention be illegal, they may discharge him, or otherwise remand to prison."). We conclude that the history and purpose of the writ of habeas corpus establish that the habeas court lacks the power to act on a habeas petition absent the petitioner's allegedly unlawful custody. Accordingly, we conclude that the custody requirement in § 52-466 is jurisdictional.

## B

The petitioner next claims that even if the custody requirement in § 52-466 is jurisdictional, the habeas court improperly determined that the collateral consequences of his expired 1992 conviction are insufficient to render him in "custody" within the meaning of § 52-466 and, thus, improperly dismissed his petition for lack of subject matter jurisdiction. We disagree.

The petitioner first relies on federal law to support his claim. In *Maleng* v. *Cook*, supra, 490 U.S. 492, the United States Supreme Court expressly considered and rejected the petitioner's argument in the context of the federal habeas statute, 28 U.S.C. § 2241. Specifically, the court concluded that "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." *Maleng* v. *Cook*, supra, 492. Accordingly, the court determined that the petitioner's claim that his subsequent sentence had

been enhanced by his prior expired conviction could be pursued only in a habeas attack on his current enhanced sentence.[14] Id., 492–93. In *Lackawanna County District Attorney* v. *Coss*, supra, 532 U.S. 402, the court did not change this conclusion, but merely went beyond the jurisdictional question presented in *Maleng* to consider "the extent to which *the [prior expired] conviction itself* may be subject to challenge *in the attack upon the [current] senten[ce]* which it was used to enhance."[15]

---

[14] We reject the petitioner's argument that in *Maleng* v. *Cook*, supra, 490 U.S. 492, the court determined that the petitioner was not "in custody" within the meaning of 28 U.S.C. § 2241, because the petitioner failed to establish an actual enhancement of his subsequent sentence. In *Maleng*, the court explicitly acknowledged that under state law, the petitioner's prior expired conviction increased "by several years the mandatory minimum term [the petitioner] will have to serve on his [subsequent] sentences"; id., 489; and thus, "the possibility of a sentence upon a subsequent conviction being enhanced because of the prior conviction actually materialized . . . ." Id., 492. Nonetheless, the court concluded that "[w]hen the second sentence is imposed, it is pursuant to the *second conviction* that the petitioner is incarcerated and is therefore 'in custody.' " (Emphasis added.) Id., 492–93.

In the present matter, unlike in *Maleng*, there is no evidence that the petitioner's subsequent sentence was actually enhanced by his prior expired conviction. The petitioner did not have an opportunity, however, to present evidence of enhancement before the habeas court dismissed his petition on jurisdictional grounds. In our review of the habeas court's dismissal of the petition, we take as true all facts alleged in the petition, including the allegation that the petitioner's subsequent sentence and security classification were enhanced by his expired 1992 conviction. See *Neiman* v. *Yale University*, supra, 270 Conn. 250–51. We emphasize, however, that where a petition properly attacks the petitioner's *current sentence*, as enhanced by an allegedly illegal expired conviction, the petitioner must produce, inter alia, *actual evidence* of enhancement to prevail on the merits of his petition. See *Lackawanna County District Attorney* v. *Coss*, supra, 532 U.S. 406–408. Although the issue is not before us in the present matter, we doubt that a sentencing judge's mere mention of a prior expired conviction would satisfy this requirement. Id., 406 (sentencing judge's " 'consideration' " of criminal record as a whole insufficient evidence of enhancement).

[15] We reject the petitioner's argument that *Lackawanna County District Attorney* represents an exception to the rule in *Maleng* that the collateral consequences of an expired conviction are insufficient to render a petitioner in custody on the expired conviction at the time the petition is filed. Contrary to the petitioner's assertion, the court in *Lackawanna County District Attorney*, explicitly affirmed its conclusion in *Maleng*. See *Lackawanna*

(Emphasis added; internal quotation marks omitted.) Because the habeas petition in the present matter does not attack the petitioner's current, allegedly enhanced sentence, but instead attacks the petitioner's expired conviction directly; see part I of this opinion; *Lackawanna County District Attorney* has no bearing on the petitioner's claim. Accordingly, we conclude that the petitioner's reliance on federal law is misplaced.[16]

The petitioner also relies on Connecticut law to support his claim. Specifically, the petitioner argues that

*County District Attorney* v. *Coss*, supra, 532 U.S. 401 (citing to *Maleng*, and concluding that petitioner is "no longer serving the sentences imposed pursuant to his 1986 convictions, and therefore cannot bring a federal habeas petition directed solely at those convictions").

[16] The petitioner also relies on *Carafas* v. *LaVallee*, supra, 391 U.S. 234. In *Carafas*, the United States Supreme Court addressed whether a habeas petition is rendered moot by the petitioner's unconditional release during the pendency of the habeas litigation. The court concluded that the habeas petition was not moot because of the collateral consequences that continued to flow from the petitioner's allegedly illegal conviction. Id., 237–38 ("[i]n consequence of his conviction, [the petitioner] cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror"). The court went on to consider whether the jurisdictional "in custody" requirement of the federal habeas statutes was also satisfied. Id., 238. The court concluded that "under the statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application." Id. Thus, the court determined that it had continuing jurisdiction over the petition. The petitioner argues that the court in *Carafas*, in resolving the jurisdictional "in custody" question, "relied in part upon the collateral consequences that the petitioner continued to suffer as a result of his assuredly illegal conviction . . . ." We disagree. In *Maleng* v. *Cook*, supra, 490 U.S. 492, the court clarified its holding in *Carafas*: "[w]hile we ultimately found [the 'in custody'] requirement satisfied . . . we rested that holding *not* on the collateral consequences of the conviction, but on the fact that the petitioner had been in physical custody under the challenged conviction at the time the petition was filed. . . . The negative implication of this holding is, of course, that once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." (Citation omitted; emphasis in original.) Thus, the petitioner's reliance on *Carafas* is unavailing.

the "collateral consequences [of a criminal conviction] are multiplying rapidly" and that "Connecticut common-law jurisprudence of habeas corpus has always included an analysis of collateral consequences in determining whether a court has jurisdiction over a habeas corpus petition."[17] We disagree. Connecticut courts, like the federal courts, have analyzed whether the collateral consequences of a conviction give the court *continuing* jurisdiction over a habeas petition that was filed when the petitioner was in custody on the conviction under attack, and thus properly invoked

---

[17] The petitioner also claims that the language of § 52-466 is broader than the language of the federal habeas statutes because it permits an individual who has been "deprived of his liberty" to file a petition for writ of habeas corpus. He argues that § 52-466 is broad enough to encompass a challenge to a fully expired conviction when the petitioner suffers adverse collateral consequences from that conviction. Compare General Statutes § 52-466 with 28 U.S.C. §§ 2241 and 2254. We disagree. It is well established that, in determining the scope of the writ of habeas corpus under state law, we look to the scope of the writ under federal law. See, e.g., *Johnson* v. *Commissioner of Correction,* supra, 258 Conn. 815 ("[t]he history of our own [habeas] jurisprudence is wholly in accord" with federal principles). This is because both state and federal law governing the writ derive from the English common law. See, e.g., *Rasul* v. *Bush,* 542 U.S. 466, 473, 124 S. Ct. 2686, 159 L. Ed. 2d 548 (2004) ("[h]abeas corpus is . . . a writ antecedent to statute . . . throwing its root deep into the genius of our common law" [internal quotation marks omitted]); *Wojculewicz* v. *Cummings,* 143 Conn. 624, 627, 124 A.2d 886 (1956) ("[t]he writ of habeas corpus, as a remedy for illegal restraint, is a prerogative common-law writ providing a special and extraordinary legal remedy"). Courts construing the term custody in the context of the federal writ of habeas corpus have concluded that the term is not limited to "actual physical detention in jail or prison. Rather the term is synonymous with restraint of liberty"; R. Sokol, Federal Habeas Corpus (2d Ed. 1969) § 6.1, p. 66; including those restraints in place when the petitioner is on parole; *Jones* v. *Cunningham,* 371 U.S. 236, 243, 83 S. Ct. 373, 9 L. Ed. 2d 285 (1963), and when he is released on his own recognizance. *Hensley* v. *Municipal Court, San Jose-Milpitas Judicial District,* 411 U.S. 345, 348–49, 93 S. Ct. 1571, 36 L. Ed. 2d 294 (1973). We conclude that the legislature's use of the phrase "deprived of his liberty" in § 52-466 was merely intended to recognize that, historically, actual physical detention is not a jurisdictional prerequisite for bringing a writ of habeas corpus. Accordingly, we conclude that the legislature did not intend to make the state writ of habeas corpus broader than its federal counterpart.

the jurisdiction of the court, or whether the subsequent expiration of the petitioner's conviction rendered the petition moot. See, e.g., *Herbert* v. *Manson*, 199 Conn. 143, 143–44 n.1, 506 A.2d 98 (1986) (habeas petition not moot despite petitioner's discharge from parole during pendency of appeal); *Haynes* v. *Bronson*, 13 Conn. App. 708, 710–11, 539 A.2d 592 (1988) (same). *Herbert* and *Haynes* relied on the United States Supreme Court's decision in *Carafas* v. *LaVallee*, supra, 391 U.S. 234, to conclude that the expiration of the criminal conviction did not render the petitioner's habeas claim moot because collateral consequences continued to flow from the petitioner's criminal conviction. See *Herbert* v. *Manson*, supra, 143–44 n.1; *Haynes* v. *Bronson*, supra, 710–11; see also footnote 16 of this opinion. Like the federal courts, however, our courts have never held that the collateral consequences of a conviction that expired *before the habeas petition was filed* are sufficient to render a petitioner in "custody" on the expired conviction within the meaning of § 52-466 and, thus, to invoke the subject matter jurisdiction of the court as an initial matter. Cf. L. Yackle, Postconviction Remedies (1981) § 49, pp. 215, 219 (noting that "restrictions upon liberty sufficient to satisfy the 'custody' requirement in [federal] habeas corpus are substantially more severe than the burdens that will prevent questions from becoming moot" and that "collateral effects standing alone are not enough to *initiate* a [federal] habeas petition" [emphasis in original]).

We conclude that a petitioner whose conviction has expired fully prior to the filing of a habeas petition is not in "custody" on that conviction within the meaning of § 52-466, despite the alleged existence of collateral consequences flowing from that conviction. To construe the term custody in the broad manner proposed by the petitioner "stretches the language [of the statute] too far." *Maleng* v. *Cook*, supra, 490 U.S. 491. Although

the custody requirement has been construed liberally; see footnote 17 of this opinion; it has never been extended to "the situation where a habeas petitioner *suffers no present restraint from a conviction.*" (Emphasis added.) Id., 492. Such an interpretation "would mean that a petitioner whose sentence has completely expired could nonetheless challenge the conviction for which it was imposed at any time" through a state petition for habeas corpus and would "read the 'in custody' requirement out of the statute." Id. To the extent that the petitioner in the present matter claims that the alleged enhancement of his current sentence and security classification has "deprived [him] of his liberty" under § 52-466 and has rendered him in custody, his loss of liberty stems solely from his current conviction. See id., 492–93. Accordingly, we conclude that the habeas court properly determined that the collateral consequences of the petitioner's expired conviction were insufficient to render him in custody on that conviction.

C

Lastly, the petitioner claims that the habeas court improperly dismissed his petition for a writ of habeas corpus in violation of the due process clause of the federal and Connecticut constitutions[18] and in violation of the prohibition in the Connecticut constitution against the suspension of the writ of habeas corpus.[19] Although the petitioner failed to raise his federal and

[18] The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "[N]or shall any State deprive any person of life, liberty or property, without due process of law . . . ."

Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

[19] Article first, § 12, of the constitution of Connecticut provides: "The privileges of the writ of habeas corpus shall not be suspended, unless, when in case of rebellion or invasion, the public safety may require it; nor in any case, but by the legislature."

state constitutional claims before the habeas court,[20] we recognize that a party may prevail on unpreserved constitutional claims pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[21] if the party affirmatively requests and adequately briefs his entitlement to *Golding* review. See *State* v. *Ramos*, 261 Conn. 156, 171, 801 A.2d 788 (2002). In the present matter, however, the petitioner makes only a passing reference to *Golding* for the first time in his reply brief and fails to brief his entitlement to *Golding* review. See *State* v. *Peeler*, 271 Conn. 338, 373 n.36, 857 A.2d 808 (2004) ("[w]e generally do not consider issues raised for the first time in a reply brief" [internal quotation marks omitted]); *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997) ("[t]he reply brief is not the proper vehicle in which to provide this court with the basis for our review under . . . [*Golding*] analysis"); see also *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 17, 761 A.2d 740 (2000) ("[i]t is not appropriate to engage in a level of review that is not requested" [internal quotation marks omitted]). Consequently, we decline to review the petitioner's constitutional claims because they are inadequately briefed. Accordingly, we conclude that the habeas court properly dismissed the habeas petition for lack of subject matter jurisdiction because the petitioner was not in custody on the conviction under attack at the time his petition was filed.

---

[20] Additionally, we note that these claims were not raised before the Appellate Court.

[21] In *State* v. *Golding*, supra, 213 Conn. 239–40, we determined that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.)

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.