******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BEACH, J., dissenting. I agree with part I, but respectfully dissent from part II of the majority's well written decision. I agree with the majority's position that, because of the default, the only issue to be decided by the trial court with respect to liability pursuant to the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., was whether the complaint can reasonably be viewed to state a viable cause of action. I believe the complaint can be so read and, perhaps more importantly, I do not believe that this issue has been adequately raised to this court by any party. Accordingly, I would not reach the issue; if the issue were reached, I would not find error.

In his brief to this court, the defendant essentially argued that, on the facts as he saw them, he fulfilled his contractual obligations. His argument regarding CUTPA, in its entirety, was "under the Connecticut Unfair Trade Practices Act that awarded the Plaintiff attorney's fees of $14,404.19 should be reversed, because the complaint was invalid and the Plaintiff complied with all the conditions of the Agreement." The defendant never suggested that the facts alleged in the complaint did not state a cause of action cognizable under CUTPA. Except perhaps in exceptional circumstances, we should not reach out to address issues not raised by a party. See, e.g., *Harris* v. *Bradley Memorial Hospital & Health Center, Inc.*, 306 Conn. 304, 327, 50 A.3d 841 (2012).[1] The phrase "the complaint was invalid" cannot be read so broadly as to include the claim addressed by the majority, but even if it were so read, it most clearly was inadequately briefed. See *Connecticut Coalition Against Millstone* v. *Connecticut Siting Council*, 286 Conn. 57, 87, 942 A.2d 345 (2008).

This court's order for supplemental briefing did not eliminate the problem. Although it surely ameliorated due process concerns; see *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 97–99, 644 A.2d 325 (1994); it did not cure the defect of having reached the issue at all. Significantly, the defendant in his supplemental brief argued only that he fulfilled his contractual obligations; he did not in any meaningful way address the question of whether the allegations of the complaint stated a cause of action.

Finally, in my opinion the complaint stated a cause of action under § 42-110a et seq. The complaint alleged, for example, that the defendant "decreased the size of certain rooms without the permission of the Plaintiffs" and concluded that the defendant "acted deceptively, in bad faith and unethically when [he] changed the scope of the project and dimensions of the house without properly explaining what [he was] doing to the

Plaintiffs." The allegation is broad enough such that facts could be introduced to show deceptive and unscrupulous practices which violate CUTPA; *Kosiorek* v. *Smigelski*, 138 Conn. App. 695, 711, 54 A.3d 564 (2012), cert. denied, 308 Conn. 901, 60 A.3d 287 (2013); and it alleges a situation more culpable than a simple breach of contract.[2] As noted by the majority, the trial court wrestled with the question of whether a CUTPA claim was stated, but its mulling over the question means neither that its resolution was incorrect nor that the question was adequately raised for consideration by this court.[3]

I respectfully dissent.

[1] The very recent case of *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123,    A.3d    (2014) (*Blumberg Associates*), officially released by our Supreme Court on February 18, 2014, does not, in my view, necessarily compel a different result. *Blumberg Associates* comprehensively catalogued situations in which appellate courts may address claims sua sponte. Id., 161–64. In my view, there has been no extraordinary injustice between the parties, and the precise rationale for exercising supervisory powers has not been expressly articulated by the majority, though prior to *Blumberg Associates* there would be no compelling reason to do so. A general apprehension of "injustice" is not ordinarily sufficient. Whether the criteria of *Blumberg Associates* have been met is a question which needs not be reached by the majority, in that it holds that, in the circumstances, the claim was adequately presented to us.

[2] At this point, of course, we consider only the allegations of the complaint. Whether credible evidence might have supported the allegations is a different issue.

[3] The majority stresses at footnote 11 of its opinion that because the trial court considered the question, it has not been ambushed. The difficulty at this point, however, is not whether the trial court considered the issue, but rather whether the issue was raised by a party for our consideration.

Similarly, the majority suggests that we should "give leeway" to self-represented litigants and should construe pleadings broadly to ensure an opportunity to be heard. Again, I generally agree. But the leeway provided to self-represented litigants has boundaries. As stated in *Mourning* v. *Commissioner of Correction*, 120 Conn. App. 612, 624–25, 992 A.2d 1169, cert. denied, 297 Conn. 919, 996 A.2d 1192 (2010): "[I]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and *when it does not interfere with the rights of other parties* to construe the rules of practice liberally in favor of the pro se party. . . . The modern trend . . . is to construe pleadings broadly and realistically, rather than narrowly and technically . . . . The courts adhere to this rule to ensure that pro se litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience . . . . This rule of construction has limits, however. Although we allow pro se litigants some latitude, *the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law.* . . . A [trial] court does not have the discretion to look beyond the pleadings and trial evidence to decide claims not raised. . . . In addition, while courts should not construe pleadings narrowly and technically, courts also cannot contort pleadings in such a way so as to strain the bounds of rational comprehension." (Emphasis added; internal quotation marks omitted.) Although we afford self-represented parties some latitude, they "are not afforded a lesser standard of compliance . . . . [S]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law." (Internal quotation marks omitted.) *Rutka* v. *Meriden*, 145 Conn. App. 202, 218, 75 A.3d 722 (2013).